UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 22-231 |
| v. | * | SECTION: "A" |
| GEORGE PETERSON | * | |
| | * * * | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

**NOW INTO COURT** comes the United States of America, represented herein by the undersigned Assistant United States Attorney, who respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial.

**INTRODUCTION**

The defendant, George PETERSON ("PETERSON"), is a Federal Firearms License ("FFL") holder that has committed federal criminal violations in his capacity as a firearms dealer. He became the target of an investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") after it was discovered a large number of firearms sold by his business, PDW Solutions, LLC ("PDW"), were recovered at various crime scenes. Additional investigation revealed numerous violations of federal law, including making a false writing to government officials, failure to report multiple sales of firearms, and suspected straw purchases of firearms. Agents subsequently obtained a search warrant for his home and business, both located at 233 Modern Farms Road in Waggaman, Louisiana. An unregistered silencer was found during the search which is the basis for the present indictment. Later, in an interview with ATF with his attorney present, PETERSON was given explicit advisements about his violations of federal law but continued to flagrantly commit the same acts after the meeting. Accordingly, the government submits PETERSON's repeated violations of federal firearms laws, and the ultimate delivery of

those same firearms into the hands of violent criminals, make him a danger to the community warranting pre-trial detention.

## FACTUAL BACKGROUND

A.     **E-TRACE REPORTS FOR GUNS SOLD BY PDW**

When a firearm is recovered from the scene of a crime, law enforcement agencies will input the information into a data sharing system. This generates a trace report which identifies the origin and last known purchaser of the firearm. Trace reports are a tool used to assist in identifying illegal firearms trafficking. Between May of 2020 and June of 2022, over 70 firearms used in crime have been traced back to PDW. Some of these firearms had been used in a crime within a week of purchase. The short "time to crime" window of these purchases are a red flag for firearms trafficking.

Six firearms sold by PDW were used in homicides, with an average time to crime of 132 days. Ten firearms were used in other violent crimes, including assault, aggravated assault, robbery, and domestic violence with an average time to crime of 146 days. Nine firearms were recovered from individuals charged with possessing them as convicted felons, with an average time to crime of 138 days. Additionally, over 20 firearms were recovered in drug related investigations.

B.     **FAILURE TO REPORT MULTIPLE SALES OF FIREARMS**

FFL holders are required to file a special report commonly referred to as a Multiple Sales Report when a single purchaser buys two or more pistols or revolvers within five business days. Purchasing multiple firearms within a short timeframe is a red flag for illegal firearms trafficking

and ATF uses these reports to target investigations on potential straw purchases. PDW has never filed a multiple sales report as required by law.

**C.    STRAW PURCHASES**

On June 14, 2022, an ATF Special Agent ("AGENT") and Confidential Informant ("CI") visited PDW. The AGENT and CI began talking to PETERSON. The CI engaged PETERSON in a conversation about the firearms inventory held by PDW. The CI asked PETERSON several questions regarding PDW's handguns in stock at the premises. During this conversation, the CI specifically indicated to PETERSON that he/she had an interest in purchasing a firearm for himself/herself. PETERSON showed the CI several pistols. A short time later, the CI told PETERSON that he/she was "ready," indicating the CI was ready to purchase the two pistols that the CI had selected. PETERSON handed the CI an ATF 4473 form, which is required to be completed by anyone purchasing a firearm from an FFL. At that time, the AGENT interrupted the conversation between the CI and PETERSON, indicating that he (the AGENT) would be filling out the paperwork instead of the CI. PETERSON asked the AGENT who the pistols were being purchased for, and the AGENT responded, "It's for me."

While continuing to complete the ATF 4473, the AGENT loudly told the CI, "I think you should get one of each," referring to the CI purchasing two pistols. This statement was made in front of PETERSON. PETERSON then told the AGENT that the AGENT's comment indicated that the handguns being purchased were actually for the CI and, in that case, the CI should be the person that completed the ATF 4473. The AGENT told PETERSON that the AGENT would be paying for the firearms, but never indicated the firearms were for the AGENT.

PETERSON reacted to the encounter about the ATF 4473 form by stating that if ATF were trying to catch PETERSON for allowing a straw purchase to occur, the current transaction would

look like one. PETERSON explained to the AGENT that a straw purchase is when one person purchases a firearm for another person because the other person cannot purchase a firearm for themselves. PETERSON asked the CI if the CI could legally purchase a firearm. The CI responded that he/she was unsure if they could legally purchase a firearm. Then, the AGENT told PETERSON, "Let me just get mine then." PETERSON consented.

A short time later, PETERSON explained to the CI that it was possible to get the CI's rights restored to where he/she could legally possess and purchase firearms. Then, the CI handed PETERSON his/her Missouri identification card, in order for PETERSON to run a criminal background check on him/her. After examining the Missouri identification, PETERSON stated he could not run a background check on the CI because the identification card was from another state. This statement makes it clear that PETERSON knows that FFLs are prohibited from transferring handguns to purchasers who do not reside in the place where they are licensed to conduct business operations. PETERSON explained that in order for him to sell the CI a handgun, he would need to send it to an FFL in Missouri, who would then complete the transaction.

Later, the AGENT and CI began discussing the purchase of ammunition with PETERSON. The CI told PETERSON that he/she wished to purchase three boxes of 9mm ammunition (50 rounds per box) for $100.00. PETERSON agreed to this deal. The CI handed the AGENT the money to be used to purchase the firearm and ammunition. PETERSON was in front of the AGENT and CI when the exchange of money took place. The AGENT purchased a handgun and the previously discussed ammunition.

After the transaction, the AGENT told PETERSON that he wished to purchase an additional handgun. PETERSON agreed, and the AGENT purchased an additional pistol from PETERSON. After completing the sale, PETERSON placed the two pistols, as well as the

4

ammunition into a single bag and placed it on his desk. The CI picked up the bag and carried it out of the location. PETERSON did not tell the CI that he/she could not receive the handguns as an out of state resident. PETERSON did not require the CI to fill out the ATF 4473 form or obtain any other information from the CI, despite the obvious indicators that this was a straw purchase. Additionally, ATF confirmed that no multiple sale was reported by PDW for the purchase of the two pistols on that date as required.

After the federal search warrant execution on June 29, 2022, ATF began reviewing the seized records from PDW and discovered another potential straw purchase. On May 14, 2022, a person ("Person 1") attempted to purchase a firearm from PDW at the Westwego Gun Show. Person 1 is prohibited from possessing a firearm due to a prior felony conviction and his background check resulted in a denial at 6:24 pm. At 6:29 pm, PETERSON ran a background check for Person 1's spouse ("Spouse 1") to buy the same exact model firearm. PETERSON sold that firearm to Spouse 1, despite it having the obvious indicators of a straw purchase.

D.     ILLEGAL OPERATION AT 233 MODERN FARMS ROAD

On June 1, 2018, PETERSON authored a letter to ATF regarding the physical location of PDW. It stated, "No inventory is kept on premise[sic] … No customer or students will be at this address." It further stated in all capital letters, "NO FIREARMS WILL BE SHIPPED TO OR FROM THE ADDRESS AT 233 MODERN FARMS ROAD, WAGGAMAN, LOUISIANA." PETERSON represented he would conduct business at gun-shows and online entirely, with no storefront and no business activity within his personal residence. Instead, he was going to base his inventory out of a leased storage unit. He produced a letter from Elmwood Self Storage & Wine Cellar, acknowledging they would "follow ATF regulation 478.23 'Right of Entry of Business Premises' at the storage unit leased by PETERSON for PDW.

ATF surveillance, undercover operations, and local law enforcement reports have shown that PETERSON is using the property at 233 Modern Farms Road, as described in Attachment A, to conduct his business as a retail location. Inventory is kept on the premises, and customers are invited to shop on site.

E.   **CONTINUED VIOLATIONS AFTER ADVISEMENT**

On October 5, 2022, PETERSON and his attorney met with members of the ATF and U.S. Attorney's Office. During that meeting, he was advised that any FFL operations out of his home was a violation of federal law. Later, ATF surveillance would reveal PETERSON was still operating out of his home and, even more concerning, another potential straw purchase was observed.

On October 12, 2022, a white SUV was parked in PETERSON's driveway. It was registered to Person 2 and Person 3. At approximately 11:48 am, Person 2 walked from behind the residence and opened the passenger door of the SUV. After a few minutes, Person 2 walked around the residence where PETERSON would operate the PDW storefront in a small building in the back of the property. At approximately 12:28 pm, Person 2 and Person 3 both walked from behind the residence and entered the SUV. Person 3 was carrying a brightly colored sheet of paper in his/her hand consistent with an invoice or receipt, while Person 2 was carrying a small black box, consistent with the size and shape of a pistol case. Person 2 and Person 3 left the location soon thereafter. Based on previous surveillance, PETERSON commonly issues brightly colored receipts after transactions.

It was determined that a background check to purchase a firearm was initiated for Person 3 on October 10, 2022 at 11:53 am by PDW. On the ATF 4473 form, the purchaser must certify that they are buying the weapon for themselves and not for another person. Person 3 filled out the

6

form, but Person 2 was carrying the firearm box back to the vehicle which was recorded on video. This is a red flag for a straw purchase and consistent with the pattern PDW's other straw purchase incidents followed. A preliminary check of Person 2's criminal history indicates he/she is prohibited from possessing a firearm due to prior convictions and ATF continues to investigate this incident.

**ARGUMENT**

PETERSON should be detained pending trial because he poses a danger to the community. Under 18 U.S.C. § 3142, upon a finding that no condition or combination of conditions "will reasonably assure … the safety of any other person and the community," the judicial officer shall order the defendant detained pending trial. The government must show a risk of danger to the community by clear and convincing evidence. *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); 18 U.S.C. § 3142(f). The factors to be considered in making such a determination are outlined in 18 U.S.C. § 3142(g), and include: (1) the nature and circumstances of the offense charged; (2) the weight of evidence against the defendant; (3) the history and characteristics of the defendant, including his financial resources and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

**A.   NATURE AND CIRCUMSTANCES OF THE OFFENSE**

The defendant possessed a firearm silencer in violation of federal law. As an FFL holder, he is well aware that such items must be registered. His business is "PDW Solutions," short for Personal Defense Weapon, but a silencer is anything but that. It is used to conceal the sound a firearm makes. This item could have been legally obtained if PETERSON followed the proper

protocols, but he did not. Instead, PETERSON concealed his possession of this dangerous item from the United States government.

B.     **WEIGHT OF THE EVIDENCE**

The firearms silencer was found inside a safe in PETERSON's home. Further, it was inside a cardboard box labeled with PETERSON's name and address. It has already been analyzed by an expert with the ATF Firearm Technology Criminal Branch, who determined it met the technical requirements of a firearm silencer. Further, the examiners determined that the silencer had been used before, meaning a round of ammunition had been fired through it.

C.     **DEFENDANT'S HISTORY AND CHARACTERISTICS**

The defendant continued to violate federal law after a specific advisement that what he was doing was illegal. He also knew he was under investigation and close scrutiny by federal law enforcement agents. Despite this, he openly continued to sell firearms out of his home and even carried out a transaction that has every red flag of another straw purchase. He was given every opportunity to cooperate and be given the benefit of the doubt, but he has thrown that away. His continued illegal conduct is evidence that he would not comply with the orders of the Court in refraining from this type of illegal activity if released on bond.

D.     **NATURE AND SERIOUSNESS OF DANGER TO THE COMMUNITY**

The Eastern District of Louisiana is experiencing a wave of violent crime. New Orleans is being coined as the "murder capital" of the nation by the press. Thus far, 70 firearms sold by PETERSON have been conclusively tied to crime scenes, dozens of which have been used in violent crimes. PETERSON'S actions and disregard for the law has had a real and significant risk to the public that cannot be ignored.

**CONCLUSION**

The evidence weighs in favor of detention as to each Section 3142 factor. PETERSON presents a real and credible threat to the safety of a community that is being overwhelmed by violent gun crime. The federal government cannot devote the resources to babysit him in order to ensure his compliance with firearm laws, but he has shown that is what would be necessary to prevent the flow of guns onto the street. **WHEREFORE**, the Government respectfully requests the Court to order the defendant be detained pending trial.

    Respectfully submitted,

    DUANE A. EVANS
    UNITED STATES ATTORNEY

    */s/ Charles D. Strauss*
    CHARLES D. STRAUSS
    Assistant United States Attorney
    Louisiana Bar Roll No. 36039
    650 Poydras Street, Suite 1600
    New Orleans, Louisiana 70130
    Telephone: (504) 680-3007
    Email: charles.strauss@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

    */s/ Charles D. Strauss*
    CHARLES D. STRAUSS
    Assistant United States Attorney