UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          *          CRIMINAL NO. 22-231

v.                                *          SECTION: "A"

GEORGE PETERSON                   *

                              *     *     *

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE

Peterson's Motion to Suppress the silencer and accompanying kit found in his bedroom (Rec. Doc. 43) should be denied. His Motion fails at the outset because he does not identify any basis—much less offer any argument—for rebutting the good-faith exception to the exclusionary rule that attaches to evidence seized pursuant to a search warrant. But even if he could get past the good-faith exception, the warrant was plainly supported by probable cause. Moreover, even if all of Peterson's arguments prevailed, his Motion would still fail. Peterson concedes that probable cause existed to search his property for "documentary" evidence. Even artificially limiting the warrant to Peterson's liking, it would provide lawful access to the location of the silencer and its seizure would be permissible under the plain view doctrine.

BACKGROUND

On June 28, 2022, ATF Special Agent Jared Miller applied for a search warrant at 233 Modern Farms Road in Waggaman, Louisiana. As detailed in Special Agent Miller's affidavit, the property served both as Peterson's residence and an illegal storefront for Peterson's firearms business, PDW Solutions. The Honorable Donna P. Currault, U.S. Magistrate Judge for the Eastern

District of Louisiana, issued the warrant the same day. *See* Gov. Ex. A (June 28, 2022 warrant package).[1]

Special Agent Miller's affidavit specified that probable cause existed that Peterson committed four federal crimes: submission of a materially false statement to the ATF (18 U.S.C. § 1001); willful failure to report multiple sales of firearms to a single purchaser (18 U.S.C. § 923(g)(1)(A)); willful failure to record required information during sale of a firearm (18 U.S.C. § 922(b)(5)); and willful delivery of a firearm to a person whom he knew did not reside in the state of Louisiana (18 U.S.C. § 922(b)(3)). Aff. Intro.

As to the false statement, Special Agent Miller's affidavit detailed that on June 1, 2018, Peterson submitted a written statement to the ATF averring that no firearms would be stored at or sold from 233 Modern Farms Road. Aff. § II. "Peterson represented that he would conduct business at gun-shows and online entirely, with no storefront and no business activity within his personal residence." *Id.* As observed and documented by federal and local law enforcement, however, Peterson was, in fact, keeping his firearm inventory at his residence and selling to customers from a storefront on his property. *See id.*

As to the failure to report multiple firearms sales, Special Agent Miller's affidavit stated that, since becoming licensed, PDW had never filed a multiple sales report—*i.e.,* never reported that two or more firearms were purchased by one buyer—and that "it is extremely uncommon for an FFL to never file a multiple sale transaction." Aff. § IV. The affidavit further relayed that in May 2022 a Jefferson Parish Sheriff's Office deputy purchased two revolvers from PDW and, on

---

[1] On October 12, 2022, Judge Currault issued a second search warrant (Misc. No. 22-mc-3832) for 233 Modern Farms Road based on further evidence of straw purchases and record keeping violations, and Peterson's continued prohibited receipt, storage, and sale of firearms at the property even after the execution of the June search warrant.

two separate occasions, June 8 and June 14, 2022, an ATF special agent purchased two pistols from PDW. *Id.* § IV & § V. Peterson did not report the multiple sales on any of the three occasions as required.

Probable cause that Peterson failed to record required information during the sale of a firearm and willfully delivered a firearm to a person whom he knew did not reside in the state of Louisiana was based on a June 14, 2022 straw purchase that an undercover ATF Special Agent made from Peterson at his property. *See* Aff. § V. The ATF agent entered Peterson's store with a confidential informant (CI). As described in detail in the affidavit, the interaction made it obvious that the CI was not a Louisiana resident and that he or she was prohibited from purchasing a firearm. *See id.* Despite these red flags, Peterson sold the ATF agent two firearms and ammunition, all of which were obviously intended for the CI. *See id.*

The Affidavit also included the alarming trace report statistics for firearms sold by PDW. *See* Aff. § VI. In the preceding two years, 70 firearms sold by PDW were recovered during criminal investigations. *Id.* Six firearms were used in homicides with an average time-to-crime (the time between the purchase of the firearm and recovery by law enforcement) of just over four months; ten were used in other violent crimes with an average time-to-crime of five months; and nine were recovered in felon-in-possession investigations, with an average time-to-crime of four and a half months. *Id.* As Special Agent Miller explained, a time-to-crime of six months or less is an indicator of illegal firearms trafficking. *Id.* These statistics therefore provided additional context for the law enforcement purchases and record keeping violations cited in the affidavit, and further evidenced that Peterson was engaged in a pattern of unlawful gun sales, which included his failure to maintain the records required to track those guns. *See id.*

The search warrant authorized the search of Peterson's property at 233 Modern Farms Road. Gov. Ex. A, Attachment A. And it authorized the seizure of specific, defined material, including receipts and records related to the purchase and sale of firearms, financial proceeds from the sale of firearms, wireless communication devices, firearms (including silencers and silencer parts), and other weapons associated with the dealing of firearms. Gov. Ex. A, Attachment B.

ATF executed the search warrant at 233 Modern Farms Road on June 29, 2022, the day after it was issued by Judge Currault. During the search, ATF agents seized the silencer that is the basis for the Indictment. The silencer was contained in a cardboard box in a safe in Peterson's bedroom closet. Peterson's name and address (233 Modern Farms) were on the box and the return address was the shipping department of "Creative Arms, LLC." Also in the box were a metal jig and drill bit, tools typically used to manufacture a silencer by drilling out a hole for a bullet to pass through. The silencer did not bear a serial number as required by law.

## APPLICABLE LAW

Courts employ a two-step process in considering a Fourth Amendment challenge to evidence seized pursuant to a search warrant. First, the Court determines whether the good-faith exception to the exclusionary rule articulated by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), applies. *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000). "The good faith exception provides that if reliance on a defective warrant is 'objectively reasonable,' the Fourth Amendment does not require suppression of evidence obtained pursuant to that warrant." *Id.*

"Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (citing *Leon*, 468 U.S. at 922). There are only four situations in

4

which the good-faith exception does not apply: "(1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid." *United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006) (citing *United States v. Cherna*, 184 F.3d 403, 407-408 (5th Cr. 1999)).

If the good-faith exception applies, the motion to suppress fails and the Court need not go any further. *Cherna*, 184 F.3d at 407; *see also, e.g.*, *United States v. Bogen*, 2017 WL 497756, at *4 (E.D. La. Feb. 7, 2017) ("If the good-faith exception applies, that ends the inquiry, and the Court need not reach the question of probable cause.") (citing *Cherna*, 184 F.3d at 407). Only if the Court concludes that the good-faith exception does not apply does the Court proceed to the second step to review the magistrate judge's determination of probable cause. *Cherna*, 184 F.3d at 407. "A magistrate judge's determination on probable cause is 'entitled to great deference.'" *Bogen*, 2017 WL 497756, at *4 (E.D. La. Feb. 7, 2017) (quoting *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991)). The question for the reviewing Court is not whether probable cause in fact existed, but only whether the "magistrate had a substantial basis for concluding that probable cause existed." *Cherna*, 184 F.3d at 407 (cleaned up).

## ARGUMENT

### I.     The Good-Faith Exception Applies.

Peterson's Motion fails at step one because the good-faith exception applies. Indeed, Peterson does not even identify a basis for challenging the ATF agents' reliance on Judge Currault's issuance of the search warrant. He instead argues only that probable cause did not exist

as to three of the four offenses cited in the warrant application. That is not sufficient to rebut the good-faith exception. Peterson does not claim that the warrant was "*so lacking in indicia of probable cause* as to render belief in its existence *entirely unreasonable*." *Sibley*, 448 F.3d at 757 (emphasis added).  Nor could he.

The deficient affidavits that fall into this category are "often described as bare bones and containing wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Gonzalez*, 766 Fed. App'x 178, 182 (5th Cir. 2019) (internal quotation marks omitted). Generally, an affidavit of this type "states the affiant 'has cause to suspect and does believe'" or "ha[s] received reliable information from a credible person and do[es] believe" that contraband is located on the property. *Brown*, 941 F.2d at 1303 n.1. Here, each offense was supported by specific facts—*i.e.*, Peterson's false representation to the ATF that he would not store or sell guns on his property, three separate law enforcement purchases from PDW, PDW's failure to ever file a multiple sales report, and time-to-crime statistics indicative of illegal firearm sales. These are not conclusory statements that the affiant believes Peterson has violated the law. The warrant is particularized and cites specific violations of federal law related to Peterson's sale of firearms (an item to be seized)[2] from his residence (the property to be searched). Indeed, Peterson concedes that probable cause existed to search his property related to his failure to report multiple sales of firearms. *See* Mot. § V. Because the good-faith exception applies, the Court need go no further and should deny Peterson's Motion.

---

[2] Under federal law, the silencer and silencer kit are firearms. 18 U.S.C. §§ 921(a)(3)(C), 921(a)(25). Peterson does not dispute that they are firearms whose seizure is authorized in Attachment B.

## II.     Judge Currault Had a "Substantial Basis" for Finding Probable Cause.

In any event, even were the Court to reach the second step, Judge Currault plainly had a "substantial basis" for concluding that probable existed.

With respect to his § 1001 violation, Peterson claims that evidence that he was storing and selling firearms on his property did not provide probable cause to believe that his representation to ATF regulators that he would do neither of those things was false. *See* Mot. § II. That is because, according to Peterson, the affidavit did not state that Peterson's letter "had not been supplemented by new and more current information." *See id.* Tellingly, Peterson does not claim that he in fact sent an updated letter to the ATF admitting that he was going to unlawfully sell firearms from his home, which of course he did not. Special Agent Miller was not required to superfluously include in his affidavit the non-existence of such information.

Peterson also alleges that there was no basis for probable cause because the affidavit did not establish that Peterson's representation was "false when given." *Id.* Peterson's statement that he would not keep or sell firearms on his property was false, as established in the affidavit. Probable cause "requires only a probability or substantial chance of criminal activity," *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018), it does not require the affiant to prove the defendant's mental state. Whether Peterson's statement was false when he made it is an issue of his intent, which is most often proved by circumstantial evidence. Judge Currault did not lack a "substantial basis" for finding probable cause because Special Agent Miller could not read Peterson's mind.

With respect to Peterson's failure to record required information from a firearms purchaser and delivery of a firearm to a person outside the state, Peterson argues that the June 14, 2022 purchase of firearms by an undercover ATF Special Agent and CI was not a straw purchase. As an initial matter, Peterson's argument that "allegations of the CI should be disregarded" is

irrelevant—an ATF agent was present for the transaction and the affidavit does not rely on information from the CI. And Peterson's argument that he did not engage in a straw purchase is, again, a trial defense concerning his intent. As set out in substantial detail in the affidavit: the CI indicated they were going to purchase a firearm for himself/herself and later told Peterson that they were "ready" to purchase two pistols; the ATF agent then said he would be filling out the ATF background check to purchase the guns and, while doing so, told the CI "I think you should get one of each." Peterson ultimately sold two guns to, nominally, the ATF agent and ammunition to the CI. The CI handed the ATF agent money for the ammunition and one of the pistols in front of Peterson. Peterson put the pistols and ammunition into a single bag and the CI picked it up and carried it out. While Peterson may have said the right things (including that "if ATF were trying to catch [him] for allowing a straw purchase to occur, the current transaction would look like one" (Aff. § V)), he sold two firearms that were obviously intended for the CI, whom it was clear could not purchase one. Whatever use may be made of them at trial, Peterson's statements—contradicted by his actions—did not nullify Judge Currault's "substantial basis" for finding probable cause.

Finally, Peterson concedes that probable cause existed that he failed to file multiple sales reports in violation of federal law (18 U.S.C. § 923(g)(1)(A)) but claims those violations would not permit the "seizure of Peterson's inventory of firearms." Peterson. Mot. § V. He does not explain why his repeated violations of federal law regulating the sale of firearms would not permit Judge Currault to authorize the search and seizure of his firearms (including the silencer and kit). Indeed, the federal statute that Peterson concedes there was probable cause to find he violated specifically authorizes, upon issuance of a warrant from a magistrate, the search of an FFL's firearm inventory when ATF discovers a record-keeping violation. *See* 18 U.S.C. § 923(g)(1)(A)(ii); *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 720 (5th Cir. 2013) ("Section

923(g)(1)(A) authorizes ATF to inspect a licensee's records *and inventory* if it has 'reasonable cause to believe a violation has occurred and that evidence thereof may be found on such premises.'") (quoting 18 U.S.C. § 923(g)(1)(A)) (emphasis added, ellipses omitted). Moreover, the statue, of course, assumes that an FFL is legally selling firearms from its "place of business." 18 U.S.C. § 923(g)(1)(A). Here, Peterson was committing record-keeping violations while unlawfully selling those firearms from his property and thus there is even more reason to seize and search his firearms. Accordingly, Peterson's concession that probable cause existed for Judge Currault to find he committed multiple violations of 18 U.S.C. § 923(g)(1)(A) alone defeats his Motion.

### III.   The Silencer and Accompanying Kit Were Subject to Seizure Under the Plain View Doctrine.

Peterson's Motion fails at the first step because he cannot rebut the good-faith exception (nor does he attempt to) and would fail at the second step because Judge Currault had a "substantial basis" for finding probable cause. But even if all of Peterson's arguments carried the day, his Motion still must be denied. Peterson concedes that there was probable cause to search his property for "documentary" and "electronic" evidence. *See* Peterson Mot. § V. Even assuming the search was so limited, ATF agents were entitled to seize the silencer and kit under the plain view doctrine.

The plain view doctrine is an exception to the general rule that only items enumerated in a search warrant can be seized. *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005). Under the doctrine, a seizure is permissible "where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character." *Id.* (internal quotation marks omitted). The doctrine applies where "(1) the officers lawfully entered the area where the items could be plainly viewed; (2) the incriminating

nature of the items was immediately apparent; and (3) the officers had a lawful right of access to the items." *Id.*

As Peterson concedes, ATF agents were entitled to search his property for documentary and electronic evidence. Such evidence (for example, receipts, invoices, and memory cards) could be found inside the cardboard box in Peterson's safe where the silencer and kit was located.[3] Accordingly, even under Peterson's own artificially circumscribed warrant, ATF agents' search of the box would fall within its scope because items authorized to be seized could be found there. *See, e.g.*, *United States v. Poulos*, 895 F.2d 1113, 1121 (6th Cir. 1990), *abrogated on other grounds by Horton v. California*, 496 U.S. 128 (1990) (plain view doctrine permitted seizure of silencer parts found in box by IRS agent while searching for financial records identified in search warrant); *United States v. Gereb*, 547 F. Supp. 2d 658, 664 (W.D. Tex. 2008) (plain view doctrine permitted seizure of handgun found in safe while searching for documentary evidence identified in search warrant). And the silencer (which, additionally, did not bear a serial number as required by law) and silencer kit could be seized because their incriminating nature was immediately apparent to the ATF agents. *See, e.g.*, *Poulos*, 895 F.2d at 1122 (silencer component parts "intrinsically suspicious" and "criminality was immediately apparent"); *United States v. Holton*, 2022 WL 4820154, at *3 (N.D. Tex. Oct. 3, 2022) (explaining that under the NFA no person may possess an unregistered firearm silencer or silencer parts and holding that "the mere presence of the silencer parts in the hotel room made their incriminating nature immediately apparent"); *United States v.*

---

[3] For all the reasons discussed above, Judge Currault had probable cause to authorize the seizure of all the items on Attachment B and ATF was entitled to rely on the warrant. The warrant authorized the seizure of firearms (which by definition includes silencers and silencer parts) and the box in which the silencer was found bore a return shipping label of "Creative Arms, LLC," clearly indicating it was related to firearms.

*Tidrow*, 2018 WL 2221531, at *5 (N.D. Tex. May 15, 2018) (incriminating nature of homemade silencer was immediately apparent).

Accordingly, even assuming every argument in Peterson's Motion were correct, the plain view doctrine would still authorize the seizure of the silencer and kit.

**IV.   Peterson is Not Entitled to an Evidentiary Hearing.**

"Evidentiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983). "Factual allegations set forth in the defendant's motion, including any accompanying affidavits, must be sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.*

Peterson has not shown cause for an evidentiary hearing. First, Peterson has not identified a basis for rebutting the good-faith exception—much less approached the required showing—and the Court therefore need go no further. *Bogen*, 2017 WL 497756, at *4 (E.D. La. Feb. 7, 2017). In any event, his Motion does not identify any alleged errors or omissions or dispute any of the facts set forth in Special Agent Miller's affidavit. He simply argues that Judge Currault came to the wrong conclusion about probable cause. As discussed above, the Court did not and there is no factual dispute to resolve at a hearing. Finally, Peterson's Motion fails on its own terms because, even granting all his arguments, the silencer and kit were permissibly seized under the plain view doctrine.

**CONCLUSION**

For the foregoing reasons, Peterson's Motion to Suppress should be denied.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

/s/ David Berman
DAVID BERMAN
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3052

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 31, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ David Berman
DAVID BERMAN
Assistant United States Attorney