UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **USA** | * | **CRIMINAL NO. 22-231** |
| | * | |
| | * | **SECTION: "A"** |
| **VERSUS** | * | **HON. JAY C. ZAINEY** |
| | * | |
| | * | **MAGISTRATE: 2** |
| **GEORGE PETERSON** | * | **HON. DONNA PHILLIPS CURRAULT** |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>**DEFENDANT GEORGE PETERSON'S SENTENCNG MEMORANDUM**</u>

**NOW INTO COURT,** through undersigned counsel, comes the Defendant herein, George Peterson, who respectfully submits this Sentencing Memorandum in anticipation of the sentencing hearing scheduled before this Honorable Court on January 9, 2024.

**I.**
**Summary**

This matter arises from the federal prosecution of Mr. Peterson for possession of an unlicensed firearm suppressor (silencer), pursuant to 26 U.S.C. Sect. 5841, 5861(d), and 5871- a Class C Felony.  On August 29, 2023, Mr. Peterson attended re-arraignment and tendered a plea of guilty.

On June 29, 2022, both Federal and State Law Enforcement Officers executed warrants on Mr. Peterson and his home at 233 Modern Farms Road, Waggaman, Louisiana.  This was also the location of his business, PDW Gun Solutions, LLC, (hereinafter "PDW") a federally licensed FFL business.  Jefferson Parish Sheriff Office (JPSO) deputies executed a search warrant as well as an arrest warrant on Mr. Peterson relative to delinquent parish sales tax issues.  A Federal Task Force, including ATF agents, Louisiana State Police officers, New Orleans Police Department officers, JPSO officers and at least one representative of the United States Attorney's Office for the Eastern

District of Louisiana, totaling over 50 Law Enforcement Officers, executed a search warrant and participated in this "raid" on Mr. Peterson's home and business for reasons discussed more fully hereinbelow.

The JPSO search and arrest warrant was based on non-payment of or delinquent parish sales taxes. Mr. Peterson acknowledges receipt of delinquent parish sales tax notices, which were presented to his accountant/bookkeeper for further handling. He denies any criminal intent in this non-payment issue.

The Federal search warrant was based upon issues with Mr. Petersons operation of PDW, specifically: alleged straw purchases; improper record keeping, on the 4473 forms; failure to complete and forward multiple firearm purchase forms; and issues related to quick time to crime traces involving firearms sold by PDW. During this raid, Federal Agents seized the entire inventory of PDW, totaling over 300 firearms, including Mr. Petersons personal firearms, firearms held by PDW for repair, and firearms awaiting delivery/transfer. In total, over $400,000. (retail value) of inventory was seized from Mr. Peterson and PDW. Also seized were PDW records, including the 4473 forms, receipts, copies of client's driver licenses, the "A & D" book, (acquisitions and dispositions), both business and personal computers, Mr. Peterson's two minor children's electronics, an external hard drive containing personal family information including family photos, two DVR's and video from them. Although not anticipated in the search, during this search the unlicensed suppressor was found in a safe and seized. No other charges were levied against Mr. Peterson save the unlicensed suppressor charge.

At all times, Mr. Peterson was fully cooperative and polite to the agents and officers raiding his home and business. After the appropriate calculation, the total guideline range in this matter is a 15, resulting in a sentencing guideline range of 18 to 24 months. As discussed further hereinbelow,

this guideline range is only advisory and not mandatory.  Mr. Peterson is of the belief that the Court can benefit from a comprehensive and robust picture of the facts and circumstances surrounding this incident as well as his life in fashioning an appropriate sentence in this matter that serves both the interests of justice as well as fairness to Mr. Peterson in the given circumstance.

## II.
## Information Relevant to this Court's Sentencing Determination

### A.   *MR. PETERSON'S PRE-OFFENSE LIFE*

As stated in the PSI report, Mr. Peterson is a 60 year old white male, who has been married to his second wife, Wendy, for 23 years with three children, ages 14, 17, and 21.  However, the PSI does not really give the Court a proper perspective of exactly who Mr. Peterson really is.

Since the age of 16, Mr. Peterson has been either employed or self-employed in some fashion.  He has worked tirelessly to support himself and his family in some of the following areas:

- Sam's Club – Receiving Dock Supervisor
- Security Industrial Insurance – Licensed Insurance Agent and Staff Manager
- Gallagher Moving and Storage – Sales, Project Supervisor
- Payphone Commissions Co – Sales, Service
- GAP One Enterprises – Owner, Sales Marketing
- ATMs of the South – Owner, Sales Marketing, Operations
- GT Amusements – Partner, Electronic Games, Pool Tables, Jukeboxes
- 1st Assurance ATM – Owner, Sales Marketing, Operations
- 10-8 Tactical Gear & Supply – Owner
- ATM Worldwide – Sales Marketing, ATM Tech
- Common Sense Radio Show – On-Air Personality, Sales
- G Peterson Enterprises – Owner, Sales Marketing, Operations
- Firearms Legal – Sales Marketing
- Uber/Lyft Driver
- Torrent Suppressors – Sales Marketing
- IPSC – Sales Marketing, Licensed Louisiana Security Guard
- PDW Solutions – Owner
- NRA Certified Firearms Instructor
- Trimlight New Orleans – Sales Marketing

Mr. Peterson is a graduate of the Orleans Parish Public School system and attended both UNO and New Orleans Regional Vo-Tech Institute. He is an active hands-on Father with all three of his children, and they are all excelling academically with 4.0 GPS's or better. Mr. Peterson is an active member of the recovery community in the Greater New Orleans Metropolitan area with over 27 years of recovery under his belt.

Mr. Peterson is additionally an active civic member of his Community. He is politically active in both State and Parish politics, both in campaign support and vetting of candidates. Some of his Community service activities:

- Founding Member and Vice President of S1 Group Civic Association
- Served as Vice President of the West Jefferson Civic Coalition
- Served two terms as a delegate on the Louisiana Republican State Central Committee
- Candidate for Jefferson Parish Council District 3
- Attended Jefferson Parish Sheriff's Office Citizens Academy
- Founding Member of the Constitution Bootcamp of Louisiana
- Sponsor of Waggaman Annual Night Out Against Crime
- Board Member of Crimefighters of Louisiana
- Board Member of New Orleans Friends of NRA
- Attended City of New Orleans Citizens Academy
- Sponsor of Louisiana FBI National Academy New Orleans Conference

Mr. Peterson has conducted the Constitutional Bootcamp for over 10 years and has received great reviews for this endeavor. This monthly meeting focusses on the basics of the Constitution, with study of the original documents by the framers, the Federalist Papers, the Antifederalist Papers, and even the Thomas Paine pamphlet "Common Sense." The discussion at these meetings is informative, passionate, and enlightening. Further, Mr. Peterson is a staunch Second Amendment advocate and has spoken on this topic at great length.

Until just recently, Mr. Peterson was a certified FFL holder and as an NRA Certified Firearms Safety Instructor, conducted classes such as the following:

– 4 –

- Introduction to Firearm Safety Classes
- Louisiana Concealed Handgun Permit Certification Classes
- Held Annual 9/11 Commemorative First Responder Louisiana CHP Class for 1st responders and their family members
- Taught age-appropriate child firearm safety classes
- Louisiana Self Defense Law

Mr. Peterson also has lifetime memberships in the following organizations:

- National Rifle Association
- Firearm Policy Coalition
- Gun Owners of America
- Second Amendment Foundation
- National Association of Gun Rights

During the time he owned and operated PDW, he attempted to conduct himself in a proper and outstanding manner including the following:

- Reporting to JPSO and ATF a man with a Glock "switch"
- Reporting to JPSO and ATF MS13 gang members attempting to purchase firearms.
- After a client received denial after Brady date, Mr. Peterson recovered the firearms from the customers.  Twice was four months later.
- Mr. Peterson turned away numerous people who were prohibited from buying firearms at both the shop and gun shows
- Mr. Peterson denied multiple "Straw" Purchases in the shop and at gun shows.
- Mr. Peterson referred multiple people with denials or delays to the NICS Appeal process, instruction them of the proper avenue to address the denial.

Further, in support of a more accurate picture of who Mr. Peterson really is, he submits together with this Sentencing Memorandum several Character Reference Letters.  It bears noting that these are just a few of over two dozen letters of such content.

### B.   *OFFENSE AND ALLEGED RELATIVE CONDUCT*

Mr. Peterson purchased a "solvent trap" and a kit to convert this solvent trap into a suppressor.  He had forgotten about the homemade suppressor until agents discovered it in a safe in his bedroom.  There was no intent to secret or hide his possession of this suppressor from the

− 5 −

government in any form or fashion. No scheme to defraud the Government out of the $200 tax levied in registering a suppressor. This was simply an oversight on Mr. Peterson's part as he was unsure if the conversion would render an operable suppressor or not and he did not want to register a inoperable solvent trap and simply forgot to do the paperwork after the conversion. Nonetheless, Mr. Peterson stands by his position on the effect of the Second Amendment as it relates to the suppressor as set forth in his Motion to Dismiss. As a staunch advocate of the Second Amendment, he takes the right to bear arms to heart. He believes that either: 1) a suppressor is an accessory/hearing protection aid for a firearm and therefore not to be regulated by the NFA; or 2) it falls within the scope of 'firearm' and therefore cannot be tracked for ownership by the NFA. The NFA's registration requirement for suppressors burdens the Second Amendment right to possess silencers for lawful purposes.

Although there are no additions to the base conduct level increasing the same for the relevant conduct cited in the PSI Report, Mr. Peterson believes it is incendiary, especially when the Probation Officer suggests it is a reason for an upward departure. One "straw purchase" was a setup at best by ATF that just did not go as planned. Mr. Peterson would not sell a firearm to an individual who was with the undercover agent for several reasons. That individual picked up the undercover agent's bag off of the counter to leave as the undercover agent had already headed for the door, leaving his bag on the counter. The second incident is similar. A prohibited individual and a permissible individual were seen going into PDW, upon leaving, the prohibited individual was carrying the bag with the alleged purchase. Neither one of these are actual straw purchases and although the government has that in a warrant, it is not proven or even provable.

The paperwork Mr. Peterson allegedly failed to complete was an administrative issue at best, as it appears highly unlikely to be able to prove the necessary criminal intent necessary for this

charge. Mr. Peterson was overwhelmed by his business and the paperwork required, he fell behind on some paperwork, however the applications and purchase forms were in fact filled out and kept in accordance with regulations together with copies of the applying persons driver's license.

The biggest issue seems to be the short "time to crime" period involving firearms purchased from PDW. It was indicated that 70 firearms had been traced to PDW with an extremely short time to crime – the time from purchase to involvement in a crime. During the continued detention hearing in this matter, an agent testified, among other things, about the short time to crime relative to PDW purchased firearms. He could not, however, state if any of these 70 firearms had been the subject of any other thefts, burglaries, carjackings, or other property crimes in between the purchase and the cited crime. In fact, he had no real information to offer other that there was a short time to crime, and appeared to be satisfied with this lack of information. There is no credible information to show that Mr. Peterson, through PDW, acted in any untoward manner in the sales of firearms.

The fact that this information is included in the PSI Report is credulous at best. An opposition to the PSI was not filed as the numerical calculations are factually correct according to statute.

### III.
### Legal Framework

Although correctly calculating the advisory Sentencing Guidelines range is an important "benchmark" and "starting point" in each criminal sentencing, *Gall v. United States,* 552 U.S. 38, 49 (2007), those guidelines are advisory and only one consideration among many. District courts are vested with broad discretion to vary upward or downward from that range to account for case- and defendant-specific circumstances "to craft an appropriate sentence falling anywhere within the range of punishment authorized by Congress." *United States v Ausburn*, 502 F. 3d 313, 327 (3d Cir. 2007).

In pursuit of the imposition of just and reasonable sentences, the Supreme Court "has long recognized that sentencing Judges 'exercise a wide discretion' in the types of evidence they may consider when imposing sentence." *Pepper v United States*, 562 U.S. 476, 480 (2011) (quoting *Williams v New York*, 337 U.S. 241, 246-47 (1949). And "[H]ighly relevant- if not essential- to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. *Id.* That principle is codified in Sect. 3553(a)(1), which specifies that sentencing courts must consider a defendant's "history and characteristics" when crafting an appropriate punishment. This sentencing factor recognizes that any punishment imposed "should fit the offender and not merely the crime." *Williams,* 337 U.S. at 247.

## IV.
## Discussion

Mr. Peterson seeks a downward departure from the 18 to 24 months currently suggested by the Sentencing Guidelines. Although he firmly believes this incident is a hot button Constitutional Second Amendment issue across the United States, overripe for litigation and modification, he further understands that currently, there is a statute in place prohibiting possessing an unlicensed silencer.

In *United States v. Vanleer*, a US District Court case from the Central Division of Utah, Mr. Vanleer requested a downward departure in sentencing for a conviction for Felon in possession of a firearm. 270 F. Supp. 2d 1318 (D, Utah 2003). The Court there, after analyzing the authority to depart in a downward fashion, then looked at one specifically cited ground for departure: where the defendant's "conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. *Id*. citing U.S.S.G; Sect. 5K2.11. The Tenth Circuit has instructed that this harm-not-threatened departure "should be interpreted narrowly." *United States v. Warner*,

43 F.3d 1335, 1338 (10th Cir.1994).

Using that evaluation in the instant matter, exactly what was the harm or evil sought to be prevented by the prohibition against possessing an unlicensed silencer which was actually threatened by Mr. Peterson's possession of this unlicensed silencer. After much research, this is actually hard to do. The NFA's mandate that owners register their silencers—which is not tied to any required safety training or exam—cannot promote some generalized interest in ensuring responsible use of firearms. By itself, a silencer's presence in the NFRTR does nothing to promote safety. The only comprehensive, data-driven study on the issue concluded that "use of silenced firearms in crime is a rare occurrence, and is a minor problem." P. Clark, *Criminal Use of Firearm Silencers*, 8 W. Crim. Review 44, 53 (2007) [hereinafter *Criminal Use*]. This study revealed that in comparison with non-silenced firearms conviction data, silencer-equipped guns are "only one-third as likely to be used to kill or injure, one-half as likely to be actively employed, and one half as likely to be used by someone with a prior record." *Id*. As the report put it, "Guns equipped with a silencer, rather than being more dangerous and more likely to be used by professional criminals or repeat offenders, are far less dangerous and less likely to be employed by professional criminals." *Id.*; *see also State v. Langlois*, 2 N.E. 3d 936, 957 (Ohio Ct. App. 2013) ("[T]he use of suppressors in gun crimes generally and in homicides specifically is extremely infrequent, and the criminal use of a registered suppressor is virtually nil relative to their wide spread ownership."). Basically, lawful citizens not criminals, are targeted by this prohibition. The only perceived harm would appear to be that law abiding citizens would be in possession of silencers without the Governments knowledge, and of course avoid paying the $200 tax.

In the instant matter, Mr. Peterson had achieved astonishing accomplishments throughout his life and overcome some serious personal hurdles. He possessed an FFL, was a certified Firearms

Safety Instructor, was active in the community as an active civic member, by all accounts, a law-abiding citizen. Although he did in fact possess an unlicensed silencer, there is no showing of what harm he threatened or advanced by such a possession. Even under the narrowly tailored interpretation of the harm-not-threatened departure analysis indicated by the 10th Circuit in Warner, a downward departure in the sentencing would be warranted as there is not even an identified harm to be threatened by Mr. Peterson's possession of the unlicensed silencer. *United States v. Warner*, 43 F.3d 1335, 1338 (10th Cir.1994).

## V.
## Conclusion

The current sentencing landscape affords a wide discretion to District Judges in fashioning sentences to appropriately address not only the crime, but also address the Defendant for "punishment" of this crime in an appropriate manner. Society would not be served in any manner by Mr. Peterson's incarceration. There would be no redress to society, no restitution to make, no safety issues to address. Mr. Peterson's actions, although against statute, were not intentionally designed to garner any outcome. His inadvertent failure to file the appropriate paperwork and pay a $200 tax were not intended to scam or defraud the United States Government. It is respectfully suggested that a downward departure in the instant matter would be warranted. A possibly more meaningful sentence would be a downward departure of several levels and a sentence of community confinement or residing in a halfway house with mandated community service relative to his transgression. It bears noting that since release on unsecured bond, Mr. Peterson has been a model "detainee", for lack of a better term. He does what he is supposed to when he is supposed to. There is no reason to believe this behavior would change if placed on Community Confinement or placed in a halfway house.

**WHEREFORE**, for the reasons set forth above, the Defendant, George Peterson, respectfully prays this Honorable Court to grant a downward departure in the sentence he is to receive on January 9, 2024.

Respectfully submitted,
s/Richard J. Richthofen, Jr.
**Richard J. Richthofen, Jr. (#29663)**
**RICHTHOFEN & ASSOCIATES, LLC**
3900 Canal Street
New Orleans, Louisiana 70119
Office: 504-899-7949
Facsimile: 504-899-2518
Email: rick@rjrlawfirm.com
Counsel for Defendant George Peterson

## CERTIFICATE OF SERVICE

I hereby certify that on January 3m 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/Richard J. Richthofen, Jr.
RICHARD J. RICHTHOFEN, JR