**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL DOCKET NO: 22-231** |
| **v.** | * | **SECTION: A** |
| **GEORGE PETERSON** | * | |

* * *

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR DOWNWARD DEPARTURE**

Peterson seeks a downward departure, painting himself as a community-service oriented man of the law who simply committed a clerical error. Nothing could be further from the truth. Peterson committed his offense of conviction—possessing an unregistered silencer—while running an illegal firearms operation. The guns that he sold have ended up on violent crime scenes across New Orleans. His request for a departure should be denied, and the Court should sentence him to a within-Guidelines sentence.

As an initial matter, Peterson's Sentencing Memorandum seeks only a downward departure, not a downward variance. The only potential basis for a downward variance Peterson identifies is USSG §5K2.11, Lesser Harms. *See* Sentencing Memorandum (R. Doc. 62) at 8. A departure may be warranted under this section where the "conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue." *Id.* The examples given are a war veteran who possesses a machine gun as a trophy, or a schoolteacher who possess controlled substances for use in a drug education program. *Id.* This is not that. Peterson was convicted of possessing an unregistered silencer. Just like the felon-in-possession cases that are regularly before the Court, the harm sought to be prevented is the possession of the item itself. Peterson's argument that silencers are not dangerous is simply a resurrection of his motion to

Dismiss, and it is inapposite here. Peterson's conduct is squarely within the "heartland" of the offense and a departure plainly is not warranted. *See* USSG Ch.1, Pt. A(1)(4)(b); *United States v. Winters*, 174 F.3d 478, 482 (5th Cir. 1999) ("[A] district court cannot depart from the guidelines unless it first finds, on the record, that facts or circumstances of a case remove that case from the 'heartland' of typical cases encompassed within the guideline.").

The Court may stop there. But should it construe Peterson's Sentencing Memorandum as requesting a downward variance, his submission instead highlights why one is not appropriate.

Peterson paints himself as a supporter of law enforcement, sponsoring an "Annual Night Out Against Crime," the "Louisiana FBI National Academy New Orleans Conference," and attending the "Jefferson Parish Sheriff's Office Citizens Academy." Sentencing Memo at 4. Whatever he purports to be saying with his money, he is not saying with his mouth. The Court is likely familiar with the recent news stories about an ATF agent who was paralyzed during an undercover operation in New Orleans in August of 2023.[1] Peterson's response was not sympathy or outrage that a law enforcement officer was severely injured while attempting to combat gun and drug trafficking in his community. It was joy. This was his Facebook post from his firearms company account, PDW Solutions:

[1] *See, e.g.*, https://www.fox8live.com/2023/08/30/federal-atf-agent-injured-3-story-fall-during-algiers-undercover-operation/




Peterson also portrays himself as a scholar and defender of the Constitution. *See, e.g.*, Sentencing Memo at 4 ("Mr. Peterson has conducted the Constitutional Bootcamp for over 10 years and has received great reviews for this endeavor."); ("Mr. Peterson is a staunch Second Amendment advocate and has spoken on this topic at great length."). Yet he denies perhaps the greatest attack on constitutional democracy since the Civil War. Below is a screenshot from Peterson's Facebook page, claiming that the January 6, 2021, attack on the Capitol was "a HOAX."



Finally, Peterson touts that he is "an active civic member of his Community" and that "[d]uring the time he owned and operated PDW, he attempted to conduct himself in a proper and outstanding manner." Sentencing Memo at 4-5. In reality, Peterson's unlawful operation of PDW was destroying his community.

To begin with, Peterson was selling firearms illegally from his home, despite his representation to ATF (who issued him a license to sell firearms) that he would not do so. *See* PSR (R. Doc. 56) at ¶¶ 29-30 (violation of state law regulations); Miller Affidavit in Support of Search Warrant for Peterson's Residence (hereinafter Miller Aff.) (R. Doc. 44-1) at 4 ("Peterson represented he would conduct business at gun-shows and online entirely, with no storefront and no business activity within his personal residence.").

And despite earning approximately $7,000 per month operating PDW Solutions from 2016-2022, Peterson failed to pay sales tax. PSR ¶66 (monthly income); ¶39 (charged with 29 counts of tax evasion in Jefferson Parish); ¶76 (Peterson reported that he owes Jefferson Parish $85,000 in unpaid sales tax). Just as he attempts to deflect blame for his instant offense (*see* Sentencing Memo at 5-6: "simply an oversight", "simply forgot to do the paperwork", "had forgotten about the homemade suppressor"), he blames his failure to pay delinquent sales tax on an employee, notwithstanding that Peterson was the sole owner and operator of the company (*see* Sentencing Memo at 2: "Mr. Peterson acknowledges receipt of delinquent parish sales tax notices, which were presented to his accountant/bookkeeper for further handling.").

More to the point, Peterson was either intentionally putting his guns in the wrong hands, or he simply did not care that they were ending up there. The Gun Control Act requires FFLs like Peterson's company "to send a report to ATF when there is a sale of multiple firearms to the same

purchaser within a certain time period." ATF, Reporting Multiple Firearms Sales.[2] "If one or more firearms recovered from a crime are part of a multiple purchase, this could be an indicator of potential firearms trafficking." *Id.*

Despite his requirement to do so, Peterson did not submit a *single* multiple sales report in the entire time he operated PDW. Miller Aff. at 2 ("Since becoming licensed, PDW has never filed a multiple sales report . . .."); PSR ¶10.[3] Unsurprisingly, given his failure to comply with reporting requirements designed to detect firearms trafficking, guns that Peterson sold ended up on crime scenes at an alarming rate. Between May 2020 and June 2022, "over 70 firearms sold by PDW were recovered by law enforcement during criminal investigations." PSR ¶31. This included six firearms used in homicides with an average time-to-crime—the time between when the firearm was purchased, and it was recovered by law enforcement—of just over four months. PSR ¶32. Ten firearms were used in other violent crimes, such as aggravated assault and robbery, with an average time-to-crime of five months, and nine were recovered in felon-in-possession investigations with an average time-to-crime of four and a half months. *See id.*

Even now, with all of the damage his firearms have caused, Peterson shirks responsibility. He dismisses his failure to comply with the requirements he promised to abide by to become an FFL as "an administrative issue at best." Sentencing Memo at 6. His claim that he merely "fell behind on some paperwork," *id.*, is plainly disingenuous—he did not submit a *single* multiple sales report in the entire time he was operating PDW. And he appears to suggest that the anomalous number of his guns ending up at crime scenes could be explained entirely by the guns being stolen

[2] https://www.atf.gov/firearms/reporting-multiple-firearms-sales.

[3] The Jefferson Parish Sheriff's Office and ATF (through an undercover agent) each made multiple purchases of firearms, which were required to be reported to the ATF. Peterson did not report either of the multiple sales. Miller Aff. at 5.

from their owners, ultimately self-servingly concluding that "[t]here is no credible information to show that Mr. Peterson . . . acted in any untoward manner in the sales of firearms." *Id.* at 7.

While Peterson attempts to distance himself from the consequences of his actions, he cannot avoid the facts. Peterson repeatedly violated his FFL requirements, including by selling guns out of his home and failing to file a single multiple-sales report, which the ATF relies on to help prevent firearms trafficking. In a period of 24 months, over 70 firearms sold by Peterson's FFL were recovered in criminal investigations. Whether he intentionally put his guns in the hands of prohibited persons (including straw purchasers) or was indifferent to the fact that they were ending up there, Peterson's failure to operate his FFL responsibility inflicted tremendous damage on the community. His callous reference to those failures as "administrative issues" tells the Court all it needs to know. He simply did not care enough that there are human victims on the other side of those guns to follow the rules.

Peterson's motion for a downward departure has no legal basis and should be denied. Should the Court construe his Sentencing Memorandum as a request for a downward variance, one is not warranted under the § 3553(a) factors and the Court should deny that too. Those factors, especially the "history and characteristics of the defendant," require a within-Guidelines sentence.

New Orleans, Louisiana, this 5th day of January, 2024.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

*/s/ David Berman*
DAVID M. BERMAN
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, LA 70130
David.Berman@usdoj.gov
Tel: (504) 680-3052

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to counsel for defendant.

*/s/ David Berman*
DAVID M. BERMAN
Assistant United States Attorney